1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____ :

                                        :    CIVIL ACTION NUMBER:
RANDY C. THOMPSON,                      :    23-cv-20468
              Plaintiff,                :
                                        :
         v.                             :
                                        :
NEW JERSEY ATTORNEY GENERAL, et         :    x`
al,                                     :    MOTION HEARING
              Defendants.               :
_____ :


     Mitchell H. Cohen Building & U.S. Courthouse
     4th & Cooper Streets
     Camden, New Jersey 08101
     January 27, 2026
     Commencing at 2:08 p.m.


B E F O R E:            THE HONORABLE EDWARD S. KIEL,
                        UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:


     RANDY C. THOMPSON
     1130 Springwood Avenue
     Asbury Park, New Jersey 07712
     Pro Se


   Ann Marie Mitchell, CRR, RDR, CCR, Official Court Reporter
              AnnMarie_Mitchell@njd.uscourts.gov
                       (856) 576-7018

   Proceedings recorded by mechanical stenography; transcript
          produced by computer-aided transcription.

*United States District Court*

A P P E A R A N C E S (Continued):

NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
BY:  MICHAEL B. McNEIL, ESQUIRE
25 Market Street, PO Box 112
Trenton, New Jersey 08625
For the Defendants New Jersey Attorney General, New Jersey Department of Children and Families, Monmouth County Prosecutors Office (MCPO),  Laura Linski, Thomas Fichter, Monica Do Oteiro, Christopher Decker, Kayla Santiago, Sergeant Michael Magliozzo, Jason Gold, Joshua Rios, Elizabeth Pinson and Unnamed Supervisor Badge # 134

PLOSIA COHEN LLC
BY:  DONALD S. DINSMORE, ESQUIRE
385 Route 24, Suite 3G
Chester, New Jersey 07930
For the Defendants City of Asbury Park and Asbury Park Police Department (APPD), Captain Amir Bercovicz, Donna Viero, Sergeant Steven Ramseur, Officer Michael, Michael Griswald, Officer Cadet, Michael Spallina, Officer McDonough, Officer Bomenblit

SCHWARTZ & POSNOCK
BY:  DAVID ALAN SCHWARTZ, ESQUIRE
99 Corbett Way, Suite 203
Eatontown, New Jersey 07724
For the Defendants Alon Bercovicz, Township of Ocean and Ocean Township Police

SANVENERO & CITTADINO LLC
BY:  WILLIAM JEFFERY, ESQUIRE
228 Maple Avenue
Red Bank, New Jersey 07701
For the Defendant Tatiana Burgos

HARTMAN DUFF LLC
BY:  CHRISTOPHER S. TRETOLA, ESQUIRE
3500 Quakerbridge Road
Hamilton, New Jersey 08619
For the Defendants Ted Bertuccio, Esq. and KMHL&D Law Firm

A L S O   P R E S E N T:
GLADYS NOVOA, Courtroom Deputy

(PROCEEDINGS held in open court before The Honorable EDWARD S. KIEL at 2:08 p.m.)

THE COURT:  Good afternoon, everyone.  Please be seated.

Did Mr. Schwartz come in yet?  No, not yet?  Okay.  We'll start without him.  He's looking for parking, as I understand it.

MR. DINSMORE:  Judge, a quick procedural question before we get going, before we go on the record.  Our claims adjuster for our township asked if she could be on -- hear the proceedings on the phone, on mute.

THE COURT:  No.

MR. DINSMORE:  Okay.  Thank you.

THE COURT:  You can't have any recording devices or things transmitting outside the courtroom.

MR. DINSMORE:  Thank you.

THE COURT:  Okay.  All right.  We are on the record in the matter of Thompson v. New Jersey Attorney General, et al.  It's case 23-cv-20468.

Mr. Thompson.

MR. THOMPSON:  Yes, Your Honor.

THE COURT:  You're here, I see.

MR. THOMPSON:  Yes.

THE COURT:  Good afternoon.

MR. THOMPSON:  Good afternoon.

THE COURT:  All right.  Let me just go through my list here.

All right.  For the State defendants.  And there's a lot, so you don't have to name them all.

MR. McNEIL:  Thank you, Your Honor.  Deputy Attorney General Michael McNeil appearing on behalf of the state defendants.

THE COURT:  Okay.  Then on behalf of the Ocean Township, Ocean Township Police Department and Alon Bercovicz.

Is that Mr. Schwartz?  That's Mr. Schwartz.  He will be here in a second.

The Asbury Park defendants.

MR. DINSMORE:  Good afternoon, Your Honor.  Donald Dinsmore of the law firm of Plosia Cohen on behalf of the defendant City of Asbury Park.

THE COURT:  Okay.  And then I have defendant John Peronne.

MS. CLARK:  Good afternoon, Your Honor.  Jeanine Clark of Margolis Edelstein on behalf of defendant John Peronne.

THE COURT:  Then we have Tatiana Burgos.

MR. JEFFREY:  Good morning, Your Honor.  William Jeffrey from Sanvenero & Cittadino for defendant Tatiana Burgos.

THE COURT:  Okay.  And the law firm defendants from

Kalavruzos.

MR. TRETOLA:  Yes.  Good afternoon, Your Honor.  Christopher Tretola from the law firm of Hartman Duff on behalf of the defendants Kalavruzos, Mumola, Hartman, Lento & Duff as well as Edward Bertuccio.

THE COURT:  Okay.  Everybody, speak up a little bit and speak into the microphone.

Did I miss anybody?  I think I got everybody.

(No response.)

THE COURT:  Okay.  Other than Mr. Schwartz who will be here momentarily.

So I have six motions in front of me, and they are all motions to dismiss.

Just to set the table of what's going on here, the original complaint was filed back in 2023.  There was some period of inactivity.  The case was dismissed.  I permitted an amended complaint.  There were motions filed to dismiss at that time.  Then there was an application to file a second amended complaint, which I permitted Mr. Thompson to do.  That resulted in more entries on the docket, extensions and all of those things.  And here we are today.

I did get a letter from Mr. Thompson today about service of process.  And we can talk about that if that becomes relevant at a later point, but I think he wanted to file something more about service of process.

So there's a few overriding themes that I want to start with, and then I'll go to Mr. Thompson, and he can respond to some of my overriding themes.

Much of your second amended complaint is what is known as a shotgun pleading. You used the term "defendants" broadly without identifying which defendants in particular that you're alleging certain facts to. That makes it very difficult for the Court and it makes it very difficult for the parties to respond. And typically shotgun pleadings are not permitted just for that reason. And you have sort of a very lengthy complaint. And the beginning of each count generally begins with a listing of nearly or I think every single defendant in the case, for example, Count 1 on page 38 starts with a listing of what I believe is every single defendant in this case.

I think that's Mr. Schwartz who just walked in; is that correct?

MR. SCHWARTZ: Yes. Good afternoon. Thank you for your patience.

THE COURT: Okay. You can enter your appearance.

MR. SCHWARTZ: Yes. Good afternoon. David Schwartz of Schwartz & Posnock on behalf of the Ocean Township defendants.

THE COURT: Okay. I know sometimes it's a little hard after a snowstorm to find parking because everybody is in

need of parking.  And so welcome.

MR. SCHWARTZ:  Thank you.

THE COURT:  So you begin each count with a listing of nearly every single defendant or maybe it is every defendant. I didn't check it out.  But I suspect that you're not making a claim against every single defendant as to every single count. So let me just begin with that.

What is your response to that when I tell you that shotgun pleadings are not permitted and you have a listing of every single defendant as to every single count but you don't separate them out as to what you're alleging as to each defendant that you name in that count?

MR. THOMPSON:  Yes, Your Honor.  That may have broadly been a mistake as far as reincorporating the paragraphs from the fact pattern so that defendants knew where their defendants were listed.

But I guess in defense of that, I would say that it all says that -- defense to that is specific time, person or place details, and those are tied to the defendants.  I would have no problem -- I know it's been a lengthy process of getting the complaint going, but -- striking names out if that would assist.

THE COURT:  Well, this is your third attempt at it, and we usually give people three attempts.  And the second attempt -- I'm sorry, this attempt followed motions to dismiss

United States District Court

that were filed as to the first amended pleading.  And so you had three opportunities now.  And I think the other parties in the motions to dismiss previously had made this very argument, that there was a shotgun pleading, they couldn't tell who was being charged with what claim.  And there has to come a point where we say, this is your operative pleading and we move forward on it.  And I think this is where we are at this point.

Would you agree?

MR. THOMPSON:  If I may, I believe that there was a request by the parties that they didn't understand and you gave some advice initially before I had any legal training whatsoever.  And this is --

THE COURT:  We had a conference before, and I told you what I thought about your complaint and what needed to be done.

MR. THOMPSON:  Yes.  List, you know, defendants, list the rule that was violated and the conduct beneath it.  And perhaps -- I think it's a vast improvement, but perhaps a more definite statement.

THE COURT:  You ask for some consideration because you're pro se, but I recall the last time we were here, you told me you were in law school.

MR. THOMPSON:  That's correct.

THE COURT:  And so you're a second year student now.

MR. THOMPSON:  No.  I'm in between years now.  I did complete my first year.

THE COURT:  Okay.  I guess you're a rising 2L, as they would call it.  Right?

MR. THOMPSON:  A little longer than I would like, but yes.

THE COURT:  Okay.  So you do get some latitude as a pro se, but you don't get latitude from the fundamental precepts of the requirement of plausibility.

And you know that.  Right?  You have to plausibly allege what your claims are and plausibly allege facts that establish those claims.

And so one of the things that I talked about, I believe, at the last conference we were at are your 1983, 1985 claims against the State entities and State employees, such as the prosecutor's office and the New Jersey Attorney General, New Jersey Department of Children and Families.

And this is another overriding theme, that you have the Section 1983 claims that are made against State and State entities that are all subject to the 11th Amendment immunity because they are not persons under 1983.  And it's been heavily briefed.  I think nearly every brief talked about it, because also within the 1983 landscape, you tried to bring in individual actors saying that they conspired with State actors or local actors and therefore they're liable under 1983.

But just staying with the State and those State entities, how do you get past the 11th Amendment immunity?

MR. THOMPSON:  I would say two ways.  And it's not going to be in the way of damages.  But one, there are claims in here that are very specific about procedures and processes by the State defendants.  And there's also a constitutional claim for void for vagueness, but they're not established as a regime.  So that would --

THE COURT:  We can talk about the void for vagueness issue later.  I'm not sure that you can bring an individual claim on that.  But let's just stick with the 11th Amendment immunity.

The law is clear, there's probably hundreds of cases out there that say that the State and State entities are not subject to liability under 1983.

MR. THOMPSON:  They would only be for injunctive relieve, prospective relief.  And also, I believe, Your Honor, in Department -- oh, *Severino v. Department of Human Services* said that --

THE COURT:  Which case?

MR. THOMPSON:  *Severino v. Department of Human Services*.

THE COURT:  I am not familiar with that case.  Okay.

MR. THOMPSON:  That was a district court ruling where they stated that the entity may not be able to be sued for

damages, but individual -- excuse me, State officials in their individual capacities can be.

THE COURT:  Okay.  So then you would agree with me that State entities and the State itself can't be sued under 1983 because of the 11th Amendment immunity?

MR. THOMPSON:  Yes.  And I agreed to that in the response brief.

THE COURT:  Okay.  So all those claims will be dismissed.

Now, as to the individuals, we can talk about the individuals in a second.  But let me just make sure that we have the right State entities.  We have the State of New Jersey, New Jersey Attorney General's Office, the Department of Children and Families the Department of Children's Placement and Permanency I think that it's called, and all the official capacity claims against all of the individual State employees.

MR. McNEIL:  Your Honor, would --

(Court reporter clarification.)

THE COURT:  You've got to bring the microphone towards you.  And everybody can stay seated because we can be -- it's awkward to have people come up to the podium.

MR. McNEIL:  Is that better?

Okay.  The Monmouth County Prosecutor's Office, would you include them as well?

THE COURT:  Yes.  I know the Monmouth County Prosecutor was being represented by the State.  Right?

MR. McNEIL:  Yes.

THE COURT:  And the Monmouth County Prosecutor as well.  So all those claims will be dismissed.

MR. THOMPSON:  Against the entities, Your Honor?

THE COURT:  Yes, against the entities.

As to the individual claims against the prosecutors, the individual prosecutors, why don't we start with those.

And you talk about administrative functions, but everything in your complaint that I see talks about classic law enforcement activities:  For instance, getting an indictment against you before a grand jury, going to court proceedings, filing motions and all of those things.

How do you get past the absolute prosecutorial immunity as to these individuals?

MR. THOMPSON:  Because -- thank you for that question.  And you're correct, there is plenty of detail on actions that are intimately associated with the judicial process which would be immune, I believe.  But one of the main themes in the case and particularly tied to the prosecutors is fabricating evidence before there was even probable cause for an arrest, as well as omitting exculpatory evidence during the investigative phase, as well as administrative processes that caused constitutional violations.

THE COURT:  There is plenty of case law that says even if you have malice and ill will towards a defendant, that the prosecutors are still absolutely immune in the role that they play as prosecutors and in law enforcement duties.

Isn't that what the case law says?

MR. THOMPSON:  There is quite a bit of case law that states -- I want to find the case, Your Honor.

One that is significant -- and I am not going to be able to pronounce it right -- *Pottawattamie County, Iowa v. McGhee*.  Now, this is --

THE COURT:  Why don't you give the cite.

MR. THOMPSON:  Excuse me?

THE COURT:  Why don't you give the citation.

MR. THOMPSON:  Sure.  556 U.S. 1181, 129, it looks like (S.Ct. 2002).

That speaks specifically to the substantive due process claims, fabrication of evidence before the filing of information against the plaintiffs by the prosecutors and their investigators.

THE COURT:  Okay.  What does that case say?

MR. THOMPSON:  Excuse me?

THE COURT:  That case, I don't have it in front of me.  It was cited by you.  That case says what?

MR. THOMPSON:  Yes.  That spoke to that there was no prosecutorial or qualified immunity for the prosecutors or the

investigators involved because before they had probable cause, they fabricated evidence as well as -- yeah, manufactured, coerced and fabricated evidence against the defendants.  That went to appeal, and the plaintiff was successful.  And then it was granted certiorari, but the prospects at the Supreme Court of the United States looked such that the defendants aggressively settled with $12 million, showing they did not have much confidence.

THE COURT:  Okay.  Does the State want to respond to that as to the prosecutorial misconduct and the absolute prosecutorial immunity?

MR. McNEIL:  Thank you, Your Honor.

I'm just taking a look at Mr. Thompson's opposition brief.  I'm not seeing a citation as to that particular case.

Oh, perhaps -- okay.  There we are.  I found it.

With respect to the absolute prosecutorial immunity, I think Your Honor is absolutely correct that the case law is clear that the immunity is very robust, even in the face of allegations of malice on the part of the prosecutor defendants.  So I would say that, you know, clearly, just based upon the case law, Mr. Thompson's claims as to the prosecutor defendants would be barred by the immunity.

THE COURT:  Yes.  I understand the law to be as such.

In your papers, I saw that you tried to say something about there being administrative duties that you were

alleging.

But these aren't administrative duties, taking a matter before a grand jury, collecting evidence, filing affidavits, filing motions with the court, appearing in court, taking statements.  Those are all classic investigative roles and prosecutorial roles in a law enforcement capacity, not in some type of administrative function.

MR. THOMPSON:  One of the defendants, Thomas Fichter, assistant prosecutor who was the lead on the criminal case, is the -- was the head of the sex crimes unit and is also head of the trial unit and would have significant involvement in the -- what was pled as a custom, policy or practice by the Monmouth County prosecutors, where they have been generating indictments that have no -- nothing on the face that has any connection to a grand jury successful vote.

THE COURT:  Well, the 1983 *Monell* claims that you're talking about, right, the States aren't liable under those, right, for under that claim.  Right?

MR. THOMPSON:  Right.

THE COURT:  So go ahead.

MR. THOMPSON:  But those would be the administrative decisions made by the lead prosecutors and also defendant Grammiccioni.

THE COURT:  But individuals can't be liable under a *Monell* claim.  It's the entity that is responsible for having

a policy or procedure.

MR. THOMPSON:  I believe they can lose their prosecutorial and qualified immunity if they make administrative decisions, though, such as setting a policy.

THE COURT:  So you're saying that these individuals, had they put in place a policy, that would be administrative and therefore they could be liable under 1983?  Is that your argument?

MR. THOMPSON:  That's what I was trying to convey, as well as the functional test from *Imbler v. Pachtman*, where they're not intimately associated with the judicial process. For instance, Prosecutor Fichter was on the phone listed in the investigator --

THE COURT:  But you're trying to pigeonhole a *Monell* liability claim and bringing individuals in on a 1983 claim by saying that they implemented policies and procedures.  That's a *Monell* claim that is against entities, not against individuals.

MR. THOMPSON:  Understood.

THE COURT:  So you're saying that somehow an administrative function that they did in implementing a policy can result in a 1983 claim, not something specific to you, but something that they did in implementing a policy?

MR. THOMPSON:  I was trying to convey that the prosecutors when they make administrative decisions would not

be covered for themselves making those decisions.  And he was the chief of the trial team as well as chief of the sex crimes unit.

THE COURT:  But your claim against him is solely as to what happened to you.  You can't make a *Monell* claim against a person.

Do you understand what I'm talking about?

MR. THOMPSON:  Yes, yes.  I understand.

THE COURT:  Those individual claims are subject to prosecutorial immunity, and they can't be brought in sideways as a *Monell* claim, because you can't allege that individuals are liable under a *Monell* claim because they implemented some policies and procedures.  That's only against an entity.

MR. THOMPSON:  Understood.  If I may add one --

THE COURT:  Sure.  Go ahead.

MR. THOMPSON:  Sure.  In the investigative reports where there are fabrications and omissions before there's any probable cause, before there's any arrest, Tom Fichter is mentioned right in there, along with the investigators from --

THE COURT:  Let me sort of guide everybody.  And I think maybe people are understanding where I'm going already, because I'm really concentrating on the federal claims here, because that's the basis for your jurisdiction.

If there's no viable federal claims, then all the federal claims would be dismissed, and the remaining state

claims would be dismissed without prejudice and you can bring them in state court, because I'm not going to exercise supplemental jurisdiction on anything that is just remaining state court claims.

You started in state court, not in this case but in your underlying case with Ms. Perry, and all of those things that happened in there.  And what I see is you trying to come to federal court and alleging federal claims to get jurisdiction here because you think you might get more of a hearing than you're getting down in state court.

MR. THOMPSON:  That was not my understanding, to be honest.  I felt --

THE COURT:  Well, why aren't you bringing all of these claims, malicious prosecution, false arrest and all of these things, before the state court that was handling your case down there?

MR. THOMPSON:  You're asking, Your Honor, why wouldn't I bring it right to that court?

THE COURT:  Yes.

MR. THOMPSON:  Well, I felt that there were the Section 1983 claims and the 1985.

THE COURT:  Well, you've brought a lot of Section 1983 claims that I've already determined and you've agreed with me are not viable.

MR. THOMPSON:  Not in the individual capacities for

any of the prosecutors or the investigators.  The investigators --

THE COURT:  Right.  And the State entities.  Right? They're not subject to 1983 liability.

And we talked about this at the previous conference. And everybody has now agreed to it at least twice, and nothing has changed on that.

And it appears to me that you're trying to pigeonhole your claims or trying to squeeze your claims into federal claims so you can have jurisdiction here and take it out of the state court where you've been litigating all of these issues before.

MR. THOMPSON:  I felt it -- that wasn't the motivation, but, you know, I don't have more of an answer than that.

THE COURT:  Let's talk about the individuals.  And you brought a lot of 1983 claims against the individuals.

And if I'm going too fast, anybody can jump in. Anybody can stand up and say, Judge, I want to say something on this issue.

Let's talk about the individuals or the claims against the individuals that are based on 1983.

First of all, I think you would agree with me that generally they have to be State actors.

MR. THOMPSON:  State action is required.

THE COURT:  No.  They have to be State actors generally.

MR. THOMPSON:  I would -- generally, yes.

THE COURT:  But you're arguing that they can be considered State actors because they were somehow involved in a conspiracy with State actors.

MR. THOMPSON:  Correct.  I got that from the Third Circuit's informational paper on Section 1983 claims.

THE COURT:  You actually cited to a Judge Hayden decision, and I was reading it before, in the *Fisher v. Lynch* case you cited to.  That's 531 F. Supp. 2d 1253.

And you probably don't know who Judge Hayden is. She's a judge up in Newark.

MR. THOMPSON:  I don't, I apologize.

THE COURT:  That's okay.  That's okay.

I'm sorry, it's Kathryn Vratil.  I thought it was Katharine Hayden.

And that was a case from the District of Kansas back in 2008.  And you cited that case for the proposition that a private lawyer can act under the color of state if that private lawyer is conspiring with a State actor.  Am I right? That's --

MR. THOMPSON:  Yes.  For the private actors, including the lawyers, yes.

THE COURT:  But that decision goes on to say:  "Mere

conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to showing agreement and concerting action."

Then later on it says:  Defendant Lynch and Defendant Mariani "conspired through legal coercion, manipulation, intimidation, fraud and force and did willingly and willfully participate in joint action under color of law."

Let me talk about your lawyers first, Mr. Peronne and -- you know, I'm sorry if I can't remember everybody's name.  There was another lawyer --

MR. TRETOLA:  Bertuccio, Your Honor.

THE COURT:  -- and the law firm.

MR. TRETOLA:  Yes.

THE COURT:  How did they conspire?  According to your complaint, your second amended complaint, how did they conspire with State actors when in fact they were representing you in your criminal defense?

MR. THOMPSON:  By not by parallel conduct that can be explained away, which is lawful, but rather by coordinated action, joint action, that shows and infers a common plan or goal to cause harm.  So that could be seen I think very visibly in that both attorneys, one who did not establish -- investigative finding came back, that's an exoneration.

The appellate court in *Department of Children and Families v. DB* said even though it has that funny language

which makes it vague and no one understands, the appellate court said --

THE COURT:  Which language are you talking about?

MR. THOMPSON:  It says -- it says, "The child is not abused, although the child may have been harmed or exposed to some harm."

And Defendant Peronne's counsel has given a zealous --

THE COURT:  Are you talking about the vagueness argument that you're talking about?

MR. THOMPSON:  Excuse me?

THE COURT:  Are you talking about the vagueness argument, about the language "not established"?  Is that what you're talking about?

MR. THOMPSON:  That same language, but neither -- neither -- neither attorney told me that that's an exoneration.  And also neither attorney even told me that --

THE COURT:  But that's a claim for malpractice. That's not an allegation of conspiracy, alleging that there was a conspiracy with a State actor.

Who?  Who is the State actor that they were conspiring with?

MR. THOMPSON:  At that point, that would be Defendant Fichter, Thomas Fichter, the prosecutor.

THE COURT:  And how was he conspiring with them?

Because that's not in your complaint.  That's not detailed in your complaint.

Let me just start off with defendant John Peronne.

MR. THOMPSON:  Sure.

THE COURT:  And you in your responding brief gave what you believe were the allegations which showed a conspiracy with a State actor.

First, Mr. Peronne -- and this is on page 20 of your brief -- concealed from plaintiff that there was no true bill of indictment against him; concealed from plaintiff that he was cleared of child abuse via the DCP&P investigative finding; concealed from plaintiff that Defendant Prosecutor Thomas Fichter violated a *Hogan* case law from grand jury; concealed from plaintiff other things; concealed that he did not demand an investigative finding; concealed that the totality of the circumstances around ST constituted child abuse and neglect; purposely prolonged the legal proceedings; refused to address witness intimidation; filed false claims with the court; refused to reject the PTI deal.

Those are all things that sound in malpractice. Right?  That doesn't say, hey, he concealed this from plaintiff in a conspiracy with Mr. Jones.  Right?  These are all things that you allege that Mr. Peronne did negligently against you and for which you have a malpractice claim.

You have a state malpractice claim in this complaint

as well.  Right?

MR. THOMPSON:  Yes.

THE COURT:  Okay.  So you can't just make a conclusory statement that these people were somehow conspiring with State actors without plausibly alleging facts that would show this agreement.

MR. THOMPSON:  I was going based off of *Twombly* and *Iqbal* that there's often not an agreement or not captured conversation and that reasonable inferences can be drawn from the actions that cannot be explained away by the parallel conduct.

THE COURT:  So your lawyer Peronne by not giving you good legal advice you're saying is inference of a conspiracy with State actors?

MR. THOMPSON:  I would say that also going as far as concealing from me that -- what was going on with my daughter, the exposure to harm at the -- at the house with the trespassing, defendant Bertuccio literally threatening me, it was quite intense and outside of the norm of just bad legal advice, I would say.  I think that's what made it more blatant, at least from my perspective.  That's -- they were intensely trying to achieve the prosecutor's goal, which is convict someone who they couldn't show their --

(Court reporter clarification.)

MR. THOMPSON:  They couldn't show their proofs for

their claims.

THE COURT:  Okay.  Well, that all sounds in malpractice to me, and I don't think that there's a plausible inference that can be made based upon these things that they did wrong allegedly in their representation of you that could plausibly infer that they entered into some kind of conspiracy with state actors.  So those are the individual claims.

Does anybody have anything to add on those?

MS. CLARK:  Judge, Jeanine Clark.

THE COURT:  Ms. Clark.  Right?

MS. CLARK:  Yes, Judge.  I'll just add, with regard to the whole conspiracy argument, I understand where Your Honor going, and I think there is no conspiracy claim and there is no pled conspiracy claim.  But also I'll just add, to the extent that our alleged co-conspirators, there can be no claim against them, there can be no claim against us for State action if the alleged co-conspirators cannot be held accountable for that.

If we get to the malpractice part of it, I'll speak further in terms of a response to that.  We certainly don't concede that there is a well-pleaded malpractice claim, but certainly there is absolutely no basis to hold my client in as a State actor --

THE COURT:  I'm not sure that I read that in your brief.  And that's an interesting point.  You're saying

because there can be no 1983 claim or conspiracy claim against the State actors, that there can't be a 1983 conspiracy claim against the individuals for conspiring with State actors?

MS. CLARK:  Yes, Your Honor.  Initially plaintiff had not opposed the State actors claims with the State actors' motions.  And I had initially drafted the brief saying, well, he hasn't opposed them, so he can't have a claim for conspiracy against us.  He then opposed the motion.  And I said, well, it's interesting he opposed it late.  So it is not expressly briefed in that in such.

But since Your Honor and it appears that we are going to have an order that says the State actors' claims are -- there can be no claim against the State actors as they are subject to immunity, not only for the reasons set forth in all of our motions and as noted by Your Honor, there can be no conspiracy claim as it relates to my client.  There isn't a well pled one for all the reasons set forth in our brief.

And additionally, there is no basis to hold my client accountable or to keep my client in on any -- whether it's a state or federal claim that requires State action, as my client was an individual and there is no basis to hold them as a State actor.  Thank you, Your Honor.

THE COURT:  Thank you.

MR. JEFFREY:  Good afternoon, Your Honor.

Are you just addressing Peronne and the law firm, or

are you addressing --

THE COURT:  Just Peronne and the law firm.

MR.  JEFFREY:  All right.

THE COURT:  As to the other individuals, they're prosecutors.  Right?

MR. JEFFREY:  Not mine.

THE COURT:  Who are your individuals?

MR. JEFFREY:  Tatiana Burgos.

THE COURT:  I'm sorry, Tatiana Burgos.

MR. JEFFREY:  Yes.

THE COURT:  And is Perry in the case?

MR. THOMPSON:  She is, but she has not responded since her initial motion to dismiss the original complaint.

THE COURT:  Okay.

MR. THOMPSON:  And I will have more information about asking for alternate forms of service to her.

THE COURT:  Well, Burgos is in the same spot.  She's not a State actor.  And the only claim that you have to bring her in under federal claims is under 1983 saying that she conspired with State actors.  Right?

MR. THOMPSON:  And local police.  Yeah.

THE COURT:  Right.

MR. THOMPSON:  Yes.  Correct, Your Honor.  Yes.

MR. DINSMORE:  Your Honor, I represent the City of Asbury Park, as I've stated earlier.  We have Sergeant

Ramseur, Officer Michael, Donna Viero, Captain Amir Bercovicz, Michael Griswald, Michael Spallina, Officer McDonough, Officer Bomenblit and Officer Cadet, all of which are included in the 1983 act and are individual police officers. And we believe that the immunity for State actors should also apply equally to municipal actors.

THE COURT: Okay. It doesn't, but there's an issue of plausibility. And this is the third iteration of the complaint, and we typically only provide three times. And particularly this was after the filing of motions to dismiss.

I told you, Mr. Thompson, at the last time that you have to separate them out, you can't have group pleadings, you've got to have plausible allegations as to each defendant as to each count and not have these group pleadings against these individuals, including police officers. So there's a plausibility issue that results in the lack of plausibility as to claims against all of the individuals.

MR. THOMPSON: A question of clarification.

THE COURT: Sure.

MR. THOMPSON: The plausibility issue is coming only because there are so many names on each count?

THE COURT: No, no. There are other issues of plausibility that I talked to you about. You talked about the conspiracy. And one of the things that I talked to you about are the allegations against Mr. Peronne, and I just went

United States District Court

through them.

MR. THOMPSON:  Yes.

THE COURT:  And they all sound in negligence, that he didn't give you certain information, he concealed certain things from you, you think that he tried to prolong your criminal case --

MR. THOMPSON:  Yes.

THE COURT:  -- for whatever reason.

But those things all sound in negligence.  And there hasn't been any plausible showing of what the conspiracy was, who was involved in the conspiracy, how was the conspiracy formulated and done.  These are the type of things that you need to have in your complaint rather than conclusory allegations saying defendants, quote/unquote, conspired with each other to do bad things to you.

MR. THOMPSON:  Do the details for Sergeant Ramseur and Officer McDonough differ at all?  Because they were in communication with another officer, Bercovicz, in Ocean Township.  He claims he did an investigation about what's going on at the house with the minor trespassing.  That information was withheld.  But also I found it later in their communications, he says, "Tell Thompson he's going to get charged with harassment for checking on his daughter."

They then threatened me with their hands on their guns, as well as my mother, who is present in the courtroom,

who was 70 at the time, threatened her with arrest.  And I did make a subset there that that appeared to be evidence of a conspiracy.

THE COURT:  I'm not sure what your question is, I apologize.  I didn't follow you.

MR. THOMPSON:  Sure.  Just whether or not those specific details were -- rise to the plausibility threshold?

THE COURT:  Which defendants?  Are these Asbury Park defendants?

MR. THOMPSON:  Yes.  Sergeant Ramseur -- I can find the --

THE COURT:  What I have as your claims against them, that you have a *Monell* claim.  As always, you have it with everybody, that there was no probable cause established.  But what I see from the allegations in your complaint as to the Asbury Park defendants was that you were processed by the police, that there was a grand jury indictment and there was a presentment to the grand jury that was affirmed by the grand jury.  There was a true bill.  And I understand you say that there was no true bill because it doesn't say true bill and there's no signature on it.

Let me just ask out of curiosity, normally when you get things given to you from grand juries, the grand juror's signature is not included.  They usually delete that.

Do you know that, sir?

United States District Court

MR. THOMPSON:  I had found other ones from other prosecutor offices, so I thought that was bizarre, so...

THE COURT:  Well, it's not bizarre to me, because everything that comes out of a grand jury is supposed to be secret.  And whoever signs it and who is the foreperson, they always take out that person's signature.  That's been my experience.

MR. THOMPSON:  I understand.

THE COURT:  And I think that you think that that might be some kind of odd thing, not to have the foreperson's signature on a true bill.  But that's my experience, when something comes in discovery or you get police records or you get grand jury proceeding records, those are supposed to be secret.  That's why they take out the foreperson's name.

MR. THOMPSON:  Understood.

THE COURT:  Anybody else on the defendants' side?

MR. TRETOLA:  Your Honor, if I may, I know you didn't talk about Mr. Bertuccio or the associated firm.  I would --

THE COURT:  The thing with Bertuccio and the associated firm is the same thing as Peronne.

MR. TRETOLA:  The allegations are essentially the same.  And the only thing that I would just indicate, Your Honor, no facts have been pled whatsoever that show any agreement, any unlawful objective, any acts in furtherance of any conspiracy.

THE COURT:  Well, and I agree with you.  That's the thing.  And this is the third iteration.

And as I said, Mr. Thompson, these are only as to the federal claims.  You're going to have whatever state claims that you want to bring against any defendant in state court.  There's no statute of limitations problem -- there may be a statute of limitations problem if they bring up later in state court, but there's no statute of limitations problem by me telling you that all your federal claims are going to be dismissed but you can continue with your state court claims in state court, because there's a statute that says you can file in state court within 30 days and keep your filing date here in federal court.

MR. THOMPSON:  Thank you.

THE COURT:  And you have a lot of state court claims.  I'm sorry, state law claims.  Let me see.  You have common law malicious prosecution.  You have conspiracy, intentional infliction of emotional distress, New Jersey Civil Rights Act, which is really what you need to bring rather than a 1983 action against the State actors.

Let me talk to you about the facial and as applied constitutional challenge to the not established finding.  I'm not quite sure what you're saying there, because an as-applied challenge is usually that the statute itself is constitutional, but as applied to you, it's unconstitutional.

Right?  Is that your understanding?

MR. THOMPSON:  That's my understanding, yes.

THE COURT:  But then you start talking about vagueness.  And I'm trying to understand your argument and trying to figure out whether you would have any individual right of claim and who that would be against.

Because you're saying this statute itself is unconstitutional as applied to you.  Right?

MR. THOMPSON:  Yes.

THE COURT:  But then you talk about vagueness.

Can you tell me about that argument a little bit?

MR. THOMPSON:  Yes.  I believe that there would be no situation where it would be constitutional, because there's contradictory cases where everyone gets the same investigative outcome, yet you have people who have abused children and also people who have not when they've opened them up administratively.

THE COURT:  I see.  I apologize for interrupting.  Your count then is a facial and as applied.

MR. THOMPSON:  Yes.

THE COURT:  So you're saying that it's not an as-applied challenge, you're just saying that it's unconstitutional on its face?

MR. THOMPSON:  I was saying both.

THE COURT:  Okay.

MR. THOMPSON:  I was under the impression that both could be pled.

THE COURT:  And I'm mistaken.  I didn't read it correctly.  Go ahead.

MR. THOMPSON:  That was the basis of it, that it was contradictory investigations for different people.  Some harmed children, some did not, yet they were still shoved into this vague category that no one really understood, because a common person should be able to know what the -- what is allowed and what isn't and what is the outcome.  Everybody understands guilty or not guilty.  But this not abused but some harm to the child has happened or some threat of harm is not understandable.

THE COURT:  I'm not quite getting your argument.

Does the State have anything to say on this issue?

I'm not even sure it's a federal claim because it says as-applied and facial constitutional challenge did not establish finding.  But you're saying that it's vague and -- I'm not quite understanding your argument.  Maybe the State has a better understanding of it.

MR. McNEIL:  Thank you, Your Honor.

We were similarly struggling with the exact, you know, basis of the claim.  However, this appears to be an attack on an administrative regulation and an administrative finding and determination made through the investigation of

DCP&P employees.  Just on the face of the complaint, it was our position that he had failed to state either a facial or an as-applied challenge to this.  And in any event, the complaint, like when you get to the request for the relief, that section doesn't contain any requested relief with respect to a finding or a determination on the constitutionality of this particular administrative regulation.  So it's the State's position that Mr. Thompson has not stated a plausible claim in this regard.

THE COURT:  Yes.  I'm not sure what the claim is under Count 10.

Can you try to explain it to me again?

MR. THOMPSON:  Certainly, Your Honor.  How can I say it clearer?

The belief was finding cases that showed that I was prosecuted under this investigative outcome as if it showed I had done harm, yet there were plenty of cases to be found that showed that people investigated were actually protecting the children, did no harm whatsoever, or someone else did the harm.

THE COURT:  But is this part of the prosecutorial process, this Administrative Code?

MR. THOMPSON:  This is Title 9 of the New Jersey Code.

THE COURT:  Yes.  It's New Jersey Administrative

Code -- well, you say 10:129-7.3.  Right?

MR. THOMPSON:  Yes.

THE COURT:  Right?  That's what you're talking about?

MR. THOMPSON:  Yes.

THE COURT:  So is this Administrative Code part of the prosecutorial process?  I'm not quite sure what you're saying.

MR. THOMPSON:  This is what the Department of Children and Families uses.  They have four categories.  They used to have two, then they had three, then they had four.  They have substantiated, sustained, not established or unfounded.  The bottom two mean the child is not abused, however, the top two mean the child was abused.  However, the not established is overly vague because it says the child was not abused but the child was exposed to some harm or risk of harm.  And it --

THE COURT:  What is your standing to challenge it?  What is your harm?  What is your Article III harm?

MR. THOMPSON:  Like I was detailing in the brief, that people are still calling me a child abuser because of that investigate outcome and that I was prosecuted for four years because that was not recognized as a finding where the child was not abused.  It should have been understood from day one, a reasonable person -- a person of a reasonable intelligence should have been able to say -- like myself -- I

understand that I've been found not to be a child abuser.

THE COURT:  But that's a challenge to the ultimate determination.  That is not a challenge to the constitutionality of that administrative code.

You're saying that I should have been found not to have done anything, unfounded.  Right?  That's the term that you wish that you had been labeled or this case should have been labeled with, unfounded.

MR. THOMPSON:  Would have been much more clear, yes.

THE COURT:  Clear?  You're saying that it's vague, but the Administrative Code has set forth these four categories.

MR. THOMPSON:  Correct.

THE COURT:  And there's no vagueness as to the four categories.

MR. THOMPSON:  They're clear, but it's the defense counsels who have argued it and also their defendants who had said, this is not an exoneration.  And I was not able to find that.  I don't think the average person can dig through those regulations in the moment necessarily.  It took quite a bit of research as well as to find the appellate court decision. That's where, you know, as Justice Gorsuch said, "If a person of ordinary reasonable intelligence doesn't understand the rule or the outcome of the rule, what behavior is allowed or not allowed, then it can't be constitutional."

THE COURT:  Well, this Administrative Code doesn't prohibit any behavior.  It doesn't criminalize any behavior.

MR. THOMPSON:  Child abuse.

THE COURT:  Of course child abuse is prohibited.

MR. THOMPSON:  Yes.

THE COURT:  But this Administrative Code doesn't prohibit any behavior, right, or criminalize any behavior.  It just gives a categorization of the finding of the administrative body.  Right?

MR. THOMPSON:  It is an investigative finding, yes.

THE COURT:  Right.  So I'm not sure how that harms you or how then you have standing on it or how that is vague.

MR. THOMPSON:  What they do is they used to have the three categories where there's the two that would sustain child abuse and the one, unfounded, that would not.  The one, unfounded, would wipe away any allegation of child abuse.  Now they created "not established," and they keep you on a list that is accessible to employers running background checks, to other organizations, if you want to work at a school, certain protected people, if you want to work at a behavioral health facility, they would all have access to that list.  And again, they can make -- they'll make their own determinations because no one understands what it means.  It sounds like you're not in trouble because you weren't found (sic) of child abuse, yet you still harmed the child and exposed the child to harm,

which sounds like child abuse.

THE COURT:  I think I understand your argument better after talking to you, but it still is not a valid facial or as-applied challenge to the constitutionality of that New Jersey Administrative Code.  So Count 10 will be dismissed.

I'm not going to do anything on the state counts.  I know I got your letter.  I'm not going to do anything on the service issue, because if you file a new complaint in state court with the state law claims and you do that in 30 days -- or if there's some other rule, but I believe it's 30 days. I'm not trying to give you legal advice, but that's what the order is going to say, that you can file within 30 days or whatever days apply under state law.  And then you can bring those new claims.

And whatever the parties want to argue as to the state law claims, they can do before the state court.  And I presume that there will be new service requirements that you'll have to comply with in state court.

All right.  So for those reasons, the federal claims will be dismissed.  The Court will dismiss the case based on lack of subject matter jurisdiction.  And the case can proceed accordingly how you feel, Mr. Thompson.  Okay?

MR. THOMPSON:  Understood.

THE COURT:  Good luck in law school.

MR. THOMPSON:  Thank you.

United States District Court

THE COURT:  Anything further for the defendants?

RESPONSE:  No, Your Honor.

THE COURT:  Thank you, everybody.  We're off the record.  Safe trip back, everybody.

COURTROOM DEPUTY:  All rise.

(Proceedings adjourned at 3:00 p.m.)

- - - - - - - - - - - - - - - - - - - - - - - - -

FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE

- - - - - - - - - - - - - - - - - - - - - - - - -

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


_/S/ Ann Marie Mitchell_          _1st day of February, 2026_
_CCR-RDR-RMR-CRR_
_Court Reporter/Transcriber_

United States District Court